## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | No. 12-20099-01-KHV |
| MENDY READ-FORBES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On April 23, 2015, the Court sentenced defendant to 240 months in prison.   This matter is before the Court on defendant's Motion For Compassionate Release Under Section 3582(c)(1)(A)(i) (Doc. #491) filed May 24, 2023 and defendant's Emergency Motion For Recusal Of Judge Vratil From Case No. 12-20099-KHV (Doc. # 500) filed August 17, 2023.   For reasons stated below, the Court overrules both motions.[1]

## Factual Background

On January 23, 2013, a grand jury returned an indictment which charged defendant with conspiracy to commit money laundering, 16 counts of laundering the proceeds of drug transactions, conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana.   See Superseding Indictment (Doc. #78).[2]   On April 21, 2014, pursuant

---

[1]     On August 3, 2023, after the government filed its response to defendant's motion for compassionate release, it sought leave to file a BOP medical summary from April of 2023 and defendant's administrative request for compassionate release.   See Motion To Supplement Government's Attachments (Doc. #499).   Because defendant has not opposed the government's request and government counsel did not receive the documents until after it had filed a response, the Court sustains the government's motion.

[2]     On April 10, 2013, in a separate action, a grand jury returned an indictment which
(continued . . .)

to a plea agreement under Rule 11(c)(1)(C), Fed. R. Crim. P., defendant pled guilty to one count

of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).   Plea Agreement

(Doc. #132).   The agreement proposed a sentencing range of 84 to 180 months in prison.   See

id., ¶ 3.   Under the agreement, the government stipulated that at sentencing, it would dismiss the

remaining 18 counts of the superseding indictment and also dismiss Case No. 13-20041-01.   See

id., ¶ 1.

At a sentencing hearing on January 28, 2015, the parties agreed to resolve various

sentencing objections: (1) defendant agreed that her offense level should be enhanced two levels

under Section 3B1.4 of the United States Sentencing Guidelines for use of a minor; (2) the

government agreed to withdraw its request for a four-level enhancement under

Section 2S1.1(b)(2)(C) for being in the business of laundering money and its request for a two-

level enhancement under Section 3B1.3 for abuse of a position of trust and (3) defendant agreed

to withdraw her objection to the amount of money laundered under Section 2S1.1.   Defendant had

a total offense level of 37 with a criminal history category I, for a guideline range of 210 to

240 months.[3]   See Transcript (Doc. #236) at 5; Presentence Investigation Report (Doc. #161) filed

December 2, 2014, ¶¶ 187, 225–38.   After hearing testimony and defendant's allocution, the

Court rejected the plea agreement.   The Court stated as follows:

---

[2](. . .continued)

charged defendant with conspiracy to defraud M&I Bank and conspiracy to commit money
laundering.   See Indictment (Doc. #1 filed in Case No. 13-20041-KHV), Counts 1 and 2.   In
particular, the grand jury in Case No. 13-20041 alleged that defendant falsely represented facts
about her business, DSR Homes, to M&I Bank and certain investors.   Id., Count 1.

Laura Shoop was the only co-defendant in Case No. 12-20099.   Defendant's husband,
Brian Forbes, was the only co-defendant in Case No. 13-20041.

[3]      The Guidelines provided a range of 210 to 262 months, but the statutory maximum
for the count of conviction capped the high end of the range at 240 months.

[Defendant is] continuing to try to manipulate people to get a better outcome for herself instead of . . . falling on the sword and just taking the facts for what they are and quit trying to manufacture evidence in support of bogus positions.   * * *

And because she doesn't get it, I am very confident that she's going to commit future crimes, that she's going to say anything – that she'll continue to manipulate people to accomplish what she wants, that she will continue to lie to get her way, that she has undisguised contempt for the legal system.   * * *

The parties here have proposed a binding plea of 84 to [1]80 months followed by three years of supervised release, no fine, and a mandatory special assessment.   In addition, there would be restitution in the amount of $370,003.70 minus any claims made in the corresponding civil lawsuit.   In addition, Ms. Forbes would agree to pay restitution for all counts, including dismissed counts in Case 12-20099.

When I look at the record in this case, including most particularly the presentence report, the statements of counsel, and especially the allocution and the statements of Ms. Forbes and the evidence which I heard here today . . . I, in good conscience, cannot accept the proposed agreement.   So I am rejecting it and will set this matter for a status conference . . . after the parties have had a chance to decide whether they want to try to renegotiate the plea agreement or to set the matter for trial.

Transcript (Doc. #236) at 191, 200, 202.

On March 18, 2015, defendant again pled guilty to one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).   Plea Agreement (Doc. #204).   The revised agreement was not under Rule 11(c)(1)(C), but it included a joint recommendation to sentence defendant to 210 months, the low end of the agreed guideline range of 210 to 240 months. See id., ¶ 3.   On April 23, 2015, the Court sentenced defendant to 240 months.

Defendant appealed.   On August 31, 2015, the Tenth Circuit granted the government's motion to enforce the appeal waiver in the plea agreement and dismissed the appeal.   See Order And Judgment (Doc. #254).

Defendant currently is confined at the prison camp at FCI Pekin, a Bureau of Prisons ("BOP") facility in Pekin, Illinois, which houses some 1300 inmates.

On May 24, 2023, defendant filed a motion for compassionate release.   Defendant seeks

release because (1) under Section 2S1.1 of the current Guidelines, her offense level would be reduced two levels, (2) under current case law, her offense level would be reduced 16 levels because the government did not establish any actual loss and (3) BOP has not adequately treated her medical conditions.   Motion For Compassionate Release Under Section 3582(c)(1)(A)(i) (Doc. #491) at 4–10.   Alternatively, defendant asks the Court to sentence her within the revised guideline range of 135 to 168 months or to allow her to serve the remainder of her prison sentence on supervised release.   Reply To Government's Response To Defendant's Motion For Compassionate Release (Doc. #501) filed August 28, 2023 at 21.

## Analysis

## I.   Motion For Recusal

Defendant asks the undersigned judge to recuse from deciding her compassionate release motion because (1) the undersigned judge's comments and rulings reflect bias and (2) a third party sent a letter to the undersigned judge stating that defendant planned to kill the undersigned judge. Emergency Motion For Recusal Of Judge Vratil From Case No. 12-20099-KHV (Doc. #500).

Defendant argues that the undersigned judge's comments throughout these proceedings prove bias.   In October of 2015, the Court overruled defendant's motion to recuse based on many of the same comments as follows:

> Defendant has attached a two-page list of comments which purportedly reflect bias.   Defendant primarily cites comments which reflect that the Court did not believe her.   See Motion To Recuse The Honorable Judge Vratil (Doc. # 257) at 3–4, citing comments at Transcript Of Sentencing (1–29–15) (Doc. # 236) at 174 ("it seems to me that you are such a drama queen and such a manipulator and chronic liar"); Transcript Of Status Conference (2–12–15) (Doc. # 237) at 42 ("I'm just saying your [client] crossed the line in lying with the Court and it's not a line that you can retreat from."); Transcript Of Status Conference (2–12–15) (Doc. # 237) at 27 (referring to defendant's "lack of credibility with the Court"); Transcript Of Motion Hearing (4–22–15) (Doc. # 230) at 15 ("she was in my view intentionally lying to the Court and obstructing justice").   In context, the Court was

simply responding to various defense arguments that seemed to minimize defendant's culpability or suggest that a sentence at the low end of the guideline range was appropriate.   The Court's comments also responded to defense arguments that she should receive a lesser sentence because of an alleged mental disorder.   See Transcript Of Sentencing (4–23–15) (Doc. # 220) at 12 ("she hasn't always been honest with the people doing the evaluations and she's been manipulative and malingering"); id. at 34 (reports indicate "the way you've tried to manipulate the doctors and malinger and not be honest about your needs and your motives"); Transcript Of Sentencing (1–29–15) (Doc. # 236) at 177 (in response to defense counsel argument for lower sentence based on personality disorder, Court noted reports that said defendant was lying, malingering and is trying to fake evidence of a defense).

A reasonable person with access to the relevant facts (including the context of the actual statements) would not question the impartiality of the undersigned judge.   Adverse rulings almost never provide a basis for recusal, nor do opinions formed or expressed by a judge based upon the record "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 554–55 (1994).   The comments here were based upon the cases before the undersigned judge, not some extra-judicial source, and they do not reflect deep-seated favoritism or antagonism that would make fair judgment impossible.   See id. at 555–56 (expressions of impatience, dissatisfaction, annoyance and even anger do not support bias challenge unless they display deep-seated favoritism or antagonism); United States v. Wisecarver, 644 F.3d 764, 771–72 (8th Cir. 2011) (no reasonable observer would have perceived that judge could not continue to rule impartially in subsequent proceedings despite comment at sentencing that defendant's factual argument was "just a figment of his imagination" and finding for sentencing purposes that defendant committed assault despite jury's acquittal on that count); United States v. Ransom, No. 09–6342, 2011 WL 2600609, at *4–5 (6th Cir. June 30, 2011) (recusal not required based on prior finding in supervised release revocation proceeding that defendant was not credible); United States v. Stewart, 378 F. App'x 773, 776–77 (10th Cir. 2010) (recusal not required based on comment that defendant "cannot control himself in any context, let alone before a jury"); United States v. Pulido, 566 F.3d 52, 56, 62 (1st Cir. 2009) (recusal not required based on prior comment in sentencing memorandum in related case that defendant was "thoroughly corrupt police officer"); Edmond v. Athlete's Foot Group, 15 F. App'x 738, 740 (10th Cir. 2001) (recusal not required in civil matter simply because judge presided in previous criminal matter involving same party); Hinman, 831 F.2d at 939 (judge should not recuse on unsupported, irrational or highly tenuous speculation); In re Corrugated Container Antitrust Litig., 614 F.2d 958, 963–64, 966 (5th Cir. 1980) (recusal not required in civil case simply because judge made evidentiary rulings during criminal trial in which defendant was also involved); Smith v. United States, 360 F.2d 590, 592 (5th Cir. 1966) (trial judge familiar with defendant's background by reason of having tried him in previous cases not disqualified to try same defendant

in subsequent cases); cf. Berger v. United States, 255 U.S. 22, 28 (1921) (finding extreme bias where district judge stated that it was difficult "not to be prejudiced against the German Americans" because "[t]heir hearts are reeking with disloyalty"). The Court therefore overrules defendant's motion under Section 455(a).

United States v. Read-Forbes, 2015 WL 6138165, at *1–2 (D. Kan. Oct. 19, 2015), aff'd, 628 F. App'x 621 (10th Cir. 2016). In addition to the comments noted in the prior order, defendant argues that bias is established because (1) at sentencing, the undersigned judge incorrectly calculated the amount of loss and (2) at a hearing in November of 2022, the undersigned judge again questioned defendant's credibility. Emergency Motion For Recusal (Doc. # 500) at 1–2. For substantially the reasons stated in the order overruling defendant's motion to recuse filed in 2015, the Court again overrules defendant's motion to recuse. The undersigned judge made the disputed comments in context of judicial rulings in this case, and they do not reflect deep-seated favoritism or antagonism that would make fair judgment impossible. Likewise, the undersigned judge's determination of the amount of loss reflects only an adverse ruling which by itself is insufficient to warrant recusal. See Liteky, 510 U.S. at 554–55.

Defendant also argues that the undersigned judge should recuse because the Court received an unsigned letter in June of 2023, which states that defendant planned to kill the undersigned judge. Emergency Motion For Recusal (Doc. #500) at 2. Defendant maintains that because the letter communicating the threat came from an "extrajudicial source," the undersigned judge should recuse. Id. (citing United States v. Greenspan, 26 F.3d 1001 (10th Cir. 1994)). In Greenspan, however, the FBI was the extrajudicial source and it communicated to the district judge a genuine death threat. 26 F.3d at 1006–07. Moreover, in Greenspan, because no evidence suggested that the threat was intended to be communicated to the judge, the district judge had no "reason to

believe that [the] threats were made only in an attempt to obtain a different judge, to delay the proceedings, to harass, or for other vexatious or frivolous purpose."   Id. at 1006.

Here, law enforcement officers apparently concluded the investigation about the letter without determining who sent it or for what purpose.   The Court is unaware of any information which ties defendant to the letter or suggests that she threatened the undersigned judge, directly or through a third party.   A judge ordinarily should not recuse based on "rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" or because of "threats or other attempts to intimidate the judge."   Cooley, 1 F.3d at 993–94.   Speculation about an apparent third party's motives in communicating an unsubstantiated threat does not warrant recusal.   The statute is not intended to give litigants a veto power over sitting judges or as a vehicle for obtaining a judge of their choice.   Id. at 992–93.   Of course, an anonymous individual likewise should not have veto power over sitting judges.

In sum, the Court overrules defendant's motion to recuse under Section 455(a).[4]

## II.     Motion For Compassionate Release

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.   See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).   Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal

---

[4]     In addition, under Section 455(b)(1), a judge must disqualify herself if she has a personal bias or prejudice concerning a party.   The undersigned has no such bias or prejudice against defendant.   See Liteky, 510 U.S. at 554–55 (bias and prejudice must come from extrajudicial source).

Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c). Under the First Step Act of 2018, 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).[5]

The Court may grant compassionate release if defendant establishes that (1) extraordinary and compelling reasons warrant a reduced sentence, (2) a reduced sentence is consistent with applicable Sentencing Commission policy statements and (3) Section 3553(a) factors warrant a reduced sentence. 18 U.S.C. § 3582(c)(1)(A); United States v. Maumau, 993 F.3d 821, 831 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021). The Sentencing Commission has not issued an "applicable" policy statement for motions for compassionate release filed by defendants. Maumau, 993 F.3d at 837; McGee, 992 F.3d at 1050. Until the Sentencing Commission issues and Congress approves such a policy statement, the second requirement does not apply.[6] See United States v. Warren, No. 11-20040-01-WPJ, 2021 WL 1575226, at *2 (D. Kan. Apr. 22, 2021). Accordingly, the Court evaluates only the first and third requirements.

---

[5] The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after she submits a request to the BOP and the earlier of (1) when she "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Because defendant has not met the other prerequisites for relief, the Court need not address whether defendant has exhausted her administrative remedies.

[6] On April 27, 2023, the United States Sentencing Commission submitted to Congress a proposed amendment to U.S.S.G. § 1B1.13, which is the policy statement that applies to motions for compassionate release. See Federal Register Notice of Amendment Submission, Issue for Comment, available at https://www.ussc.gov/policymaking/federal-register-notices/federal-register-notice-submission-2023-amendments-congress (last visited October 12, 2023). Absent congressional action to the contrary, the proposed amendment will go into effect on November 1, 2023.

-8-

A.    Extraordinary And Compelling Reasons For Release

The Court has discretion to independently determine whether defendant has shown "extraordinary and compelling reasons" that warrant release.  See McGee, 992 F.3d at 1044, 1048.  In this context, "extraordinary" means "exceptional to a very marked extent."  United States v. Ford, 536 F. Supp. 3d 848, 853 (D. Kan. 2021) (quotations and citations omitted). "Compelling" means "tending to convince . . . by forcefulness of evidence."  Id.  While the Sentencing Commission definition of extraordinary and compelling reasons for BOP motions is not controlling, the Court considers that definition in ruling on defense motions.  See United States v. Carr, 851 F. App'x 848, 853 (10th Cir. 2021) (district court has discretion to consider definition of extraordinary and compelling reasons in Section 1B1.13 application notes); see also United States v. Hald, 8 F.4th 932, 938 (10th Cir. 2021) (while policy statement does not restrict district court discretion, "it would hardly be an abuse of discretion for a district court to look to the present policy statement for guidance"), cert. denied, 142 S. Ct. 2742 (2022).  For BOP motions, the Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) a catchall category for an "extraordinary and compelling reason other than, or in combination with," the first three categories.  U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018).

Defendant seeks release because (1) under the current Guidelines, her offense level would be reduced two levels, (2) under current case law, because the government did not establish any actual loss, her offense level would be reduced 16 levels and (3) BOP has not adequately treated her medical ailments.  Motion For Compassionate Release Under Section 3582(c)(1)(A)(i) (Doc.

#491) at 4–10.

       1.   <u>Changes In Section 2S1.1 Of Sentencing Guidelines</u>

      Defendant argues that her guideline range would be lower today, and that this constitutes an extraordinary and compelling reason for a reduced sentence. Specifically, defendant asserts that based on changes in Section 2S1.1, her base offense level for the loss amount applied at sentencing (more than $1,000,000 but less than $2,500,000) would be reduced two levels and her guideline range today would be 168 to 210 months. <u>Motion For Compassionate Release</u> (Doc. #491) at 4.

      To warrant compassionate release, the Court has broad "discretion to consider whether any reasons are extraordinary and compelling." <u>McGee</u>, 992 F.3d at 1050 (quoting <u>United States v. Brooker</u>, 976 F.3d 228, 236 (2d Cir. 2020)) (emphasis added); <u>Maumau</u>, 993 F.3d at 837 (quoting <u>Brooker</u>, 976 F.3d at 236) (emphasis added). Even so, a non-retroactive change in the Guidelines alone is insufficient to establish extraordinary and compelling reasons for release. <u>United States v. Arriola-Perez</u>, 2022 WL 2388418, at *2–3 (10th Cir. July 1, 2022) (citing <u>McGee</u>, 992 F.3d at 1048). Instead, the Court can grant compassionate release only where a defendant can establish that "a combination of factors"—including a non-retroactive change in the Guidelines—warrant relief after an "individualized review of all the circumstances" of her case. <u>Maumau</u>, 993 F.3d at 837; <u>see also</u> <u>id.</u> at 838 (Tymkovich, C.J., concurring) (relief based on non-retroactive statutory change); <u>cf.</u> <u>United States v. McCall</u>, 56 F.4th 1048, 1056 (6th Cir. 2022) (en banc) ("nonretroactivity of judicial precedent announcing a new rule of criminal procedure" not extraordinary; criminal defendant serving duration of lawfully imposed sentence is routine, not compelling).

      Defendant has not shown that the non-retroactive change in the guideline range in the

-10-

circumstances of her case is an extraordinary and compelling reason for release.[7]   Defendant

ignores the fact that under the plea agreement, the parties stipulated to the relevant guideline range

of 210 to 240 months.   When defendant entered her plea of guilty, she fully understood that the

agreement precluded her from raising objections to the guideline range of 210 to 240 months.

Plea Agreement (Doc. #204), ¶ 3; see United States v. Read-Forbes, 2017 WL 3730497, at *4 (D.

Kan. Aug. 30, 2017).   Defendant has not addressed the merits of the government's objections to

the guideline range which it withdrew based on the agreed guideline range in the plea agreement.

See United States' Sentencing Memorandum (Doc. #167) filed January 20, 2015 at 4 (government

withdrew objections that offense level did not include four-level enhancement under

Section 2S1.1(b)(2)(C) for being in business of laundering money and two-level enhancement

under Section 3B1.3 for abuse of position of trust); Defendant's Sentencing Memorandum (Doc.

#173) filed January 28, 2015 at 1 (agreed total offense level 37 after withdrawn objections).   Even

if defendant could somehow show that both of the government's withdrawn objections lack merit,

she has not shown that a reduction in the guideline range is an extraordinary and compelling reason

for release.   As explained previously, in light of the Court's numerous findings as to defendant's

lack of credibility and the factors under Section 3553(a), defendant has not shown—and cannot

show—a reasonable probability that if a lower guideline range had applied, the Court would not

have varied upward and imposed the same sentence of 240 months.   Read-Forbes, 2017 WL

---

[7]        At sentencing, because the loss amount was greater than $1,000,000, the Court calculated a base offense level of 24.   U.S.S.G. § 2S1.1(a)(2) (base offense level is 8 plus number of offense levels for loss amount under § 2B1.1) (2014 ed.); U.S.S.G. § 2B1.1(b)(1)(I) (add 16 levels for loss more than $1,000,000).   Under the current Guidelines, based on a non-retroactive amendment to the loss table in Section 2B1.1, defendant's base offense level would be 22.   See U.S.S.G. § 2B1.1(b)(1)(I) (add 14 levels for loss more than $550,000 but less than or equal to $1,500,000) (2021 ed.).

3730497, at *5.   In sum, defendant has not shown that the change to Section 2S1.1 of the Guidelines constitutes an extraordinary and compelling reason for release.[8]

2.   Changes In Case Law

Defendant argues that under current case law, no enhancement for loss under Section 2B1.1 would apply.   Under the Sentencing Commission's commentary to Section 2B1.1, loss is defined as "the greater of actual loss or intended loss."   U.S.S.G. § 2B1.1, cmt. n.3(A). Defendant asserts that after Kisor v. Wilkie, 139 S. Ct. 2400 (2019) and United States v. Banks, 55 F.4th 246 (3d Cir. 2022), the Court should refuse to follow the commentary and only apply an enhancement for loss if the government can establish "actual loss."

Traditionally, under Stinson v. United States, 508 U.S. 36 (1993), the Sentencing Commission's commentary controls unless it "run[s] afoul of the Constitution or a federal statute" or is "plainly erroneous or inconsistent" with the guideline provision it interprets.   United States v. Maloid, 71 F.4th 795, 805 (10th Cir. 2023) (quoting Stinson, 508 U.S. at 47).   In Kisor, the Supreme Court held that courts can only defer to commentary accompanying executive agency regulations when the associated regulation is "genuinely ambiguous."   139 S. Ct. at 2414.   The Tenth Circuit recently held, however, that Kisor does not apply to the Sentencing Commission's

---

[8]   As noted above, absent congressional action to the contrary, the Sentencing Commission's proposed policy statement on motions for compassionate release will take effect on November 1, 2023.   See supra note 6.   Under the proposed policy statement, in determining whether a defendant presents an extraordinary and compelling reason for release, the Court cannot rely on a non-retroactive amendment to the Guidelines.   See Proposed U.S.S.G. § 1B1.13(c), available at https://www.ussc.gov/policymaking/federal-register-notices/federal-register-notice-submission-2023-amendments-congress (last visited October 11, 2023).   Even so, if a defendant can otherwise establish that extraordinary and compelling reasons warrant relief, the proposed policy statement permits the district court to consider a non-retroactive amendment to the Guidelines for purposes of determining the extent of any such relief.   See id.

commentary on the Guidelines.   United States v. Coates, 82 F.4th 953, 956–57 (10th Cir. 2023)

(Stinson standard controls Sentencing Commission commentary); see Maloid, 71 F.4th at 809 ("if

the Supreme Court meant Kisor to reach sentencing, it would have said so").   But see Banks, 55

F.4th at 257–58 (after Kisor, commentary to § 2B1.1 defining loss entitled to no weight because it

expands ordinary meaning of "loss" as "actual loss").

Under current case law, the Court continues to follow the Commission's commentary to

Section 2B1.1 which defines loss as the greater of actual loss and intended loss.   Defendant has

not shown that the commentary is inconsistent with the Constitution or a federal statute or is

"plainly erroneous or inconsistent" with the guideline provision it interprets.   Maloid, 71 F.4th

795, 805 (10th Cir. 2023) (quoting Stinson, 508 U.S. at 47); see Taboada v. United States, No. 19-

CR-117 (LJL), 2023 WL 2466595, at *3 (S.D.N.Y. Feb. 13, 2023) (Application Note 3(A) not

unreasonable interpretation of Section 2B1.1), reconsideration denied, 2023 WL 3584411

(S.D.N.Y. May 22, 2023); cf. United States v. Williams, No. 19-CR-315-1 (VLB), 2023 WL

2613503, at *9 (D. Conn. Mar. 23, 2023) (even under Kisor, guideline commentary defining loss

as "greater of actual loss or intended loss" entitled to controlling weight).   Even if defendant could

establish a change in case law, she has not shown that the compassionate release statute authorizes

courts to reduce a sentence based solely on "post-sentencing developments in case law."   United

States v. Saldana, 807 F. App'x 816, 820 (10th Cir. 2020); see United States v. Brock, 39 F.4th

462, 466 (7th Cir. 2022) (judicial decisions, announcing new law or otherwise, cannot alone

amount to extraordinary and compelling reason for reduced sentence).[9]

---

[9]      Under the Sentencing Commission's proposed policy statement, in determining
whether a defendant presents an extraordinary and compelling reason for release, the Court—after
full consideration of the defendant's individualized circumstances—can rely on a change in law if
(continued . . .)

### 3. <u>Untreated Medical And Dental Conditions</u>

Defendant asserts that BOP has provided inadequate care related to her carpal tunnel syndrome, spinal stenosis, seizures and dental problems.   <u>Motion For Compassionate Release</u> (Doc. #491) at 9.   To qualify for compassionate release, defendant must show extraordinary and compelling reasons for a reduced sentence, not that BOP has delayed medical care or even provided "constitutionally deficient medical care."   <u>Reply To Government's Response To Defendant's Motion For Compassionate Release</u> (Doc. #501) at 5; <u>see</u> <u>United States v. Montoya</u>, No. 22-6004, 2022 WL 3207615, at *2 n.1 (10th Cir. Aug. 9, 2022) (violation of Fifth and Eighth Amendments based on ability of BOP to provide medical care not independent ground for granting compassionate release, but underlying facts may be relevant to decision whether to grant release).   Defendant's medical records reveal a number of medical conditions and some delays in recommended diagnostic tests or treatment.   Even so, defendant has not shown that BOP's overall handling of her medical and dental care constitutes an extraordinary and compelling reason for release.   BOP apparently is attempting to address defendant's medical concerns and has referred her to several outside providers of care.[10]   Defendant has not shown that BOP cannot

---

[9](. . .continued)
a defendant received an unusually long sentence and has served at least ten years of the term of imprisonment and the change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.   <u>See</u> Proposed U.S.S.G. § 1B1.13(b)(6), available at https://www.ussc.gov/policymaking/federal-register-notices/federal-register-notice-submission-2023-amendments-congress (last visited October 11, 2023)

[10]        Despite the fact that defendant is in prison, BOP has provided defendant with access to a number of outside resources.   For example, on May 2, 2023, some three weeks before defendant filed her motion, BOP allowed plaintiff to visit a local eye doctor.   BOP Health Records (Doc. #507) at 9.   On May 3, 2023, BOP had a local neurologist review defendant's treatment for spinal stenosis.   <u>Id.</u> at 8.   On May 6, 2023, based on defendant's report of numbness on her right side, BOP transported her to a local emergency room.   <u>Id.</u> at 4–5.

-14-

adequately provide medical care or that if released, she would have access to better medical care. Cf. United States v. Perez-Hernandez, No. 21-2104, 2022 WL 1639308, at *2 (10th Cir. May 24, 2022) (in context of § 3553(a)(2)(D)—which directs sentencing court to consider need for sentence imposed to provide defendant with needed medical care—defendant failed to show that complaints about care were more than disagreements with professional judgment of medical caregivers or provide evidence that he would receive better medical care if released).[11]   As with defendant's earlier challenge to BOP medical care, to the extent that she seeks relief for inadequate medical treatment which does not warrant her release, she apparently would have to file a challenge to the execution of her sentence under 28 U.S.C. § 2241 or the conditions of her confinement under Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) or possibly a request for injunctive relief "to enforce the dictates of the Eighth Amendment."   Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1231 (10th Cir. 2005).   See United States v. Read-Forbes, 2020 WL 2766525, at *2 (D. Kan. May 28, 2020).

Defendant also argues that because of her medical conditions, if FCI Pekin had a COVID-19 outbreak, she would be at increased risk of severe disease or death.   Defendant does not claim that she lacks access to the COVID-19 vaccine.   Defendant has a number of medical conditions, which together may elevate her risk of contracting COVID-19 or suffering severe illness from it. Even so, apparently, the prevailing scientific view is that even vaccinated individuals with medical

---

[11]      The medical records are difficult to follow, but it appears that medical providers recommended various diagnostic tests, medical consultations and dental treatment, which have yet to be completed.  **Within 30 days, the BOP shall provide defendant with a written summary of the status of any outstanding diagnostic tests and any recommended medical and dental procedures or consultations.   For each item, this summary shall include the estimated date for completion and, if known, the name and contact information of the medical or dental provider.**

comorbidities do not have a significant risk of severe disease or death if they contract COVID-19. Defendant has not shown that compared to her proposed placement in the community, she faces a heightened or imminent risk of exposure to COVID-19 at FCI Pekin.   See United States v. Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).   In sum, defendant has not established that her health conditions and the risk of a COVID-19 outbreak at FCI-Pekin collectively constitute an extraordinary and compelling reason for release.   See Hald, 8 F.4th at 939 n.5 ("access to vaccination . . . would presumably weigh against a finding of extraordinary and compelling reasons"); United States v. Gunkel, No. 22-5055, 2022 WL 17543489 (10th Cir. Dec. 9, 2022) (despite defendant's medical conditions, district court did not abuse discretion finding that vaccinations prevented "undue risk" of serious COVID-19 case or resulting complications); United States v. McRae, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) (when defendant has access to vaccine, incarceration during COVID-19 pandemic does not present extraordinary and compelling reason warranting sentence reduction).   Likewise, even if the Court considers defendant's medical conditions, the adequacy of BOP care and the risk of COVID-19, collectively with her arguments about changes in the Guidelines and case law, she has failed to show extraordinary and compelling reasons for release.

B.     Section 3553(a) Factors

Even if defendant could somehow show that her various stated grounds for relief collectively constitute "extraordinary and compelling" reasons for release, the Court would deny relief after considering the factors under 18 U.S.C. § 3553.   The Court considers the nature and circumstances of the offense, defendant's personal history and characteristics, the purposes of

sentencing including the need to protect the public from further crimes of the defendant, any threat to public safety and the need to avoid unwanted sentence disparities among defendants with similar records who are convicted of similar conduct.   <u>See</u> 18 U.S.C. § 3553(a).   A sentence of either time served—which is approximately 151 months including good time credit—or defendant's alternative request of 168 months is inconsistent with the seriousness of defendant's offense, defendant's personal history and characteristics, the need for deterrence and the need to protect the public.

Defendant committed a significant money laundering offense.   Defendant is a lawyer and she touted her expertise in the law, as well as in asset and income concealment.   [Revised] Presentence Investigation Report (Doc. #207), ¶ 51.   Defendant conspired to launder large sums of money that she knew related to the sale of marijuana.   To accomplish this purpose, she used fictitious entities and fraudulent business contracts, and fraudulently opened bank accounts in the name of the fictitious entities.   <u>Id.</u>, ¶ 93.   Defendant told an undercover agent that attorneys and law enforcement officers provided her information that allowed her to facilitate her schemes without detection.   <u>Id.</u>, ¶ 51.   In addition to the conspiracy to launder the proceeds of drug transactions, the government charged defendant with a separate conspiracy to commit bank, mail and wire fraud and to launder money.   Case No. 13-20041-KHV.   Even on release in this matter, defendant continued her fraudulent activity.   During the negotiation for the sale of her business, defendant did not inform the prospective purchaser that the business's license to conduct bankruptcy credit counseling had been revoked or that she had been indicted.   [Revised] Presentence Investigation Report (Doc. #207), ¶ 36.   Instead, she told the prospective purchaser that the Department of Justice had failed to renew the license because of an accountant mistake.   <u>Id.</u>   During release, defendant also stole the identity of a former employee of her business and

issued some 200 credit counseling certificates in that individual's name.   Id., ¶ 37.

Defendant claims that her sentence is unduly harsh compared with her co-defendants, but she has failed to show that these individuals engaged in similar conduct.   18 U.S.C. § 3553(a)(6). As highlighted by the Court's comments throughout the record, the scope and severity of defendant's misconduct warranted a much more severe sentence than the sentences of her co-defendants.

Defendant also argues that the Court should consider that the government breached the plea agreement because it made derogatory statements at sentencing.   Reply (Doc. #501) at 19. The Court will not consider arguments first raised in a reply brief.   See Mondaine v. Am. Drug Stores, Inc., 408 F. Supp. 2d 1169, 1202–03 (D. Kan. 2006); Mike v. Dymon, Inc., No. 95-2405-EEO, 1996 WL 427761, at *2 (D. Kan. July 25, 1996) (in fairness and to ensure proper notice, court generally summarily denies or excludes all arguments and issues first raised in reply brief). In any event, defendant has not established that the government breached the plea agreement or that any alleged breach had a material impact on her sentence.

For these reasons and substantially the reasons stated at sentencing, the Court finds that a reduced sentence would not adequately protect the public from defendant committing further crimes or deter her from committing future crimes.   Transcript Of Sentencing (Doc. #220) at 24. In addition, a reduction of defendant's sentence to time served or to 168 months would reflect a significant disparity from her current sentence of 240 months, which was the high end of her guideline range of 210 to 240 months.

Defendant has received discipline in BOP custody for fighting with another inmate in 2020 and assaulting an individual in 2016.   Other than these incidents, BOP has disciplined defendant for relatively minor incidents.   Defendant has completed more than half her sentence and made

some limited progress toward rehabilitation. Even so, on balance, the factors under Section 3553(a) do not support a reduced sentence.

In sum, defendant has not shown "extraordinary and compelling" reasons for a reduced sentence and the factors under Section 3553(a) do not support a reduced sentence. The Court therefore overrules defendant's motion for compassionate release.

**IT IS THEREFORE ORDERED** that defendant's Motion For Compassionate Release Under Section 3582(c)(1)(A)(i) (Doc. #491) filed May 24, 2023 is **OVERRULED**.

**IT IS FURTHER ORDERED** that the Motion To Supplement Government's Attachments (Doc. #499) filed August 3, 2023 is **SUSTAINED**.

**IT IS FURTHER ORDERED** that defendant's Emergency Motion For Recusal Of Judge Vratil From Case No. 12-20099-KHV (Doc. #500) filed August 17, 2023 is **OVERRULED**.

**IT IS FURTHER ORDERED** that **within 30 days, the BOP shall provide defendant with a written summary of the status of any outstanding diagnostic tests and any recommended medical and dental procedures or consultations. For each item, this summary shall include the estimated date for completion and, if known, the name and contact information of the medical or dental provider.**

Dated this 20th day of October, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge