TRULINCS 22253031 - READ-FORBES, MENDY - Unit: CCC-B-A

--------------------------------------------------------------------------------------------

FROM: 22253031
TO:
SUBJECT: COMPASSIONATE RELEASE
DATE: 06/23/2024 01:19:59 PM

June 23RD, 2024

From: Mendy Read-Forbes #22253031
       MCC- 71 West Van Buren Street
       Chicago, IL 60605

To:  United States Court House
     Attn: Clerk of Court
     500 State Avenue, Room 259
     Kansas City, KS   66101-2400

FILED
U.S. District Court
District of Kansas

JUN 2 7 2024

Clerk, U.S. District Court
By_____ Deputy Clerk

---

UNITED STATES OF AMERICA,
Plaintiff

v.

MOTION FOR COMPASSIONATE RELEASE
FILED PRO SE IN ACCORDANCE WITH
18 U.S.C. 3582(c)(1)(A) AS AMENDED BY
THE FIRST STEP ACT OF 2018

MENDY READ-FORBES,
Defendant

---

COMES NOW the Defendant with a Motion for Compassionate Release being filed pro se in accordance with 18 U.S.C. 3582(c)(1)(A) as amended by the First Step Act of 2018 on the basis of the defendant having been the VICTIM OF ABUSE; MEDICAL CIRCUMSTANCES OF THE DEFENDANT; UNUSUALLY LONG SENTENCE; and OTHER REASONS and all of these have been determined to be "extraordinary and compelling reasons" to warrant a reduction in sentence by the United States Sentencing Commission in U.S.S.G. 1B1.13 which states:

1B1.13 Reduction in Term of Imprisonment Under 18 U.S.C. 3582(c)(1)(A)(Policy Statement)

(b) EXTRAORDINARY AND COMPELLING REASONS - Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) Medical Circumstance of the Defendant. -

(B) The Defendant is -

(i) suffering from a serious physical or medical condition,

that substantially diminishes the ability of the Defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

and

(C) The Defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the Defendant is at risk of serious deterioration in health or death.

and

(4) VICTIM OF ABUSE. - The Defendant, while in the custody serving the term of imprisonment sought to be reduced, was a

TRULINCS 22253031 - READ-FORBES, MENDY - Unit: CCC-B-A

--------------------------------------------------------------------------------

victim of:

(A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246 (2)(D) regardless of the age of the victim)

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who has custody or control over the Defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the Defendant is in imminent danger. (Forbes proceedings were unduly delayed the official complaint was lodged on approximately February 14, 2023 and to this date there has been no outcome to the investigation and Collette Peters as you will see below has stated there is a back-log of more than 2 years on these investigations and Officer Scott Born has already been found guilty for sexually assaulting another inmate and sentenced to 90 days).

Forbes provided previous documentation to this court as an addendum to her last filed Compassionate Release filed Approximately October 20, 2023 showing documents including:
 * BP10 sent to Annapolis in 2018 after sexual assault occurred along with all documentation filed on the assault. Please see that filing.

and

(6) UNUSUALLY LONG SENTENCE. - If a Defendant received an unusually long sentence and has served at least ten (10) years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) - may be considered in determining whether the Defendant presents an extraordinary and compelling reason, but only where such a change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the Defendant's individualized circumstances.

The MEDICAL CIRCUMSTANCES OF THE DEFENDANT has been brought before this Honorable Court previously as the Defendant has been diagnosed and medical care/treatment has not been provided by the Federal Bureau of Prisons for:

1. Spinal Stenosis (untreated as of this date)
2. Dental Canaries (untreated as of this date)
3. Neurological Disorder (untreated as of this date)
4. Diabetes (untreated and blood sugars have not been tested for months)
5. This Honorable Judge Ordered the BOP in October 2023 to within 30 days to provide Forbes with medical documentation and the BOP failed to do so within 30 days.

(5) OTHER REASONS: The Defendant presents any other circumstances by themselves or together with any of the reasons described in paragraphs 1 through 4, are similar in gravity to those describes in paragraph 1 through 4. Since Forbes has an extraordinary and compelling reason in the fact that she was sexually assaulted now she can combine that with the fact that her sentencing guidelines changes November 1, 2015 reducing her money amount for 1.1 million by 2 levels taking her to 210 months instead of 240 months as the November 1, 2023 Sentencing Guideline suggest.

On Sunday, January 28, 2024, a documentary was released by "60 Minutes" and aired on public television (CBS), and now is available to the public on-line, entitled "Agency in Crisis" in which Reporter Cecelia Vega interviewed the Director of the Federal Bureau of Prisons which is currently short-staffed approximately 8,000 officers nationwide and is no longer able to provide the safety, medical care/treatment, psychological service, rehabilitation and protection specified by law.

Since the 60 Minutes Documentary was released, CNN, reported "Chronic failures by the Federal Bureau of Prisons contributed to the deaths of hundreds of federal prison inmates," the Department of Justice's Inspector General said in what CNN described as a "blistering report" released Thursday, February 15, 2024.

"A combination of negligence, operational failures, and a blundering workforce," the Washington Post wrote. CNN said that the Department of Justice (DOJ) itself issued scathing rebukes against the Federal Bureau of Prisons (BOP), outlining serious mistakes that have led to the death of high profile inmates. But, the circumstances that led to [those high profile] deaths are emblematic of wide-ranging and recurring issues within the federal prison system that affect hundreds of inmates across the country..."

TRULINCS 22253031 - READ-FORBES, MENDY - Unit: CCC-B-A

--------------------------------------------------------------------------------

The BOP continues to face severe staffing shortages. Correctional officers work multiple shifts and health care workers are "augmented" to serve as correctional officers, being pulled from their regular duties.

A report was issued February 6, 2024, by the Government Accountability Office, chastised the BOP for implementing fewer that half of prior GAO recommendations and blamed the BOP for failing to "assign responsibility to appropriate officials."

Ms. Read-Forbes' sexual abuse was reported to the Office of the Inspector General (OIG). The Defendant has been the VICTIM OF ABUSE and the United States Sentencing Guideline in 1B1.13(b)(4)(A) requires that the Defendant suffered sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246(2)(D) regardless of the age of the victim).

18 U.S.C. 2246(2) defines "sexual act":

(2) the term "sexual act" means -

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth . . ., the mouth and the vulva, . . .;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

The Defendant, Ms. Read-Forbes, was the victim of abuse that fits the very text and definition of 18 U.S.C. 2246(2)(D) and the Officer involved was criminally convicted.  Additionally, the Defendant has initiated civil litigation for this sexual abuse with Attorney Gennaro Carriglio, 8101 Biscayne Blvd., 7th Floor Penthouse, Miami, FL 33138. See attached email from Carriglio.

Regarding the UNUSUALLY LONG SENTENCE, the Defendant asserts that on the transcripts at the sentencing hearing of Read-Forbes, Judge Vratil stated that she would have only sentenced Read-Forbes to a possible 10 or 11 years but due to the plea agreement that the government argued and fought for a sentence longer than 210 months as they agreed to in the plea agreement. The average sentence for a first time money launder with $234,000 is less than 70 months as shown in Read-Forbes previous filings with the court based on the average statistics.

The Defendant, Ms. Read-Forbes, has been determined by the Federal Bureau of Prison to be at MINIMUM Risk of Recidivism, MINIMUM Risk for Violence and is to be held in MINIMUM Security Custody.

The First Step Act of 2018 amended the language regarding Compassionate Release in 18 U.S.C. 3582(c)(1)(A) which now reads in relevant part:

(c) Modification of an imposed term of imprisonment. The Court may not modify a term of imprisonment once it has been imposed except that -(1) in any case-

(A) the Court, upon motion of the Director of the Bureau of Prisons, or upon motion of the Defendant after the Defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term or imprisonment); after considering the factors set forth in section 3553(a) to the extent that are applicable.

Your Honor, specifically, "...and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment..." I respectfully request a term of supervised release with special conditions that include vital and necessary mental health counseling/therapy and treatment. (The BOP has failed to meet my request for outside treatment due to my sexual assault - Dr. Nabors, FPC Pekin was to look into getting counseling, however failed to do so and has now left employment with the BOP).

TRULINCS 22253031 - READ-FORBES, MENDY - Unit: CCC-B-A

----------------------------------------------------------------------------------------------

The pandemic has materially effected the Federal Bureau of Prisons and they are extremely short-staffed and no longer able to provide the safety, medical care/treatment, psychological services, and evidence based recidivism reducing educational classes and programs specified by law.

The Defendant, Ms. Read Forbes, will comply with the U.S. Probation Office (Krisha Wilbur has already been to her residence once and approved it at that time) regarding the special conditions imposed with a term of supervised release (not to exceed the original term of the sentence) in order to acquire this necessary mental and physical health care/treatment.

Considering her initiative to seek rehabilitative treatment while incarcerated, and her satisfactory behavior while incarcerated, her custody level and security level, as well as the intense supervised release special conditions that could be imposed with this motion, additional incarceration is not necessary to "protect the public from further crimes of the defendant." 18 U.S.C. 3553(a)(2)(C).

Ms. Read-Forbes' obligation to comply with the terms of supervised release would best "provide the defendant with... correctional treatment in the most effective manner." 18 U.S.C. 3553(a)(2)(D).

Incarceration is not the only "kind of sentence available." 18 U.S.C. 3553(a)(3).  A non-custodial sentence will limit her liberty interests through supervised release and she will face harsh consequences if she violates the special conditions activated upon her release from BOP custody. United States v. Gall, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005) rev'd, 446 F. 3d 884 (8th Cir. 2006), rev'd, 552 U.S. 38, 128 S.Ct. 586, 169 L. Ed. 2d 445 (2007).

TRULINCS 22253031 - READ-FORBES, MENDY - Unit: CCC-B-A

--------------------------------------------------------------------------------------------------

FROM: 22253031
TO: Deer, Nancy
SUBJECT: sentence disparity
DATE: 05/10/2024 10:27:47 AM


SENTENCE DISPARITY 3553(a) Factor

The Court erred when it failed to find that Read-Forbes Sentence Disparity as it compares to the Sentences of Ron Partee (related case# 2:12CR20006-1) and Laura Shoop's sentence is extraordinary and compelling.

The District Court was also incorrect when it stated that defendant failed to show that these individuals engaged in similar conduct. Read-Forbes pointed out in the Compassionate Release that Laura Shoop in her Plea Agreement Paragraph 2 that her sentence was only enhanced for $234,000. Forbes also pointed out that Laura Shoop only received a sentence of 42 months. Read-Forbes also pointed out that related case Ron Partee was the one who signed the contract, prepared the contract and was on the board of directors. Read-Forbes also pointed out that Ron Partee was also only enhanced on his sentence for $234,000 and received 60 months. So Forbes did show that her co-defendant and related case of Ronald Partee engaged in similar conduct.

"A sentence disparity may, in limited circumstances, constitute extraordinary and compelling reasons to reduce a sentence and grant Compassionate Release." U.S. v. Eccleston, 573 F. Supp. 3d 1013, 1017 (D.Md.2021) (granting compassionate release after finding "has demonstrated that the disparity between his sentence and those of his co-defendant's constitutes an extraordinary and compelling reason for release."

3553(a)6- This factor examines "the need to avoid unwarranted sentencing disparities among defendant's with similar records who have been found guilty of similar conduct." 18 USC Section 3553(a)6. Read-Forbes has already served more time than Laura Shoop and Ron Partee put together there time totaled 102 months and with all of her credits Read-Forbes has served 190 months this is DEFINATELY AN UNWARRANTED SENTENCE DISPARITY creating extraordinary and compelling reasons for the court to grant her compassionate release. See J-2

Ron Partee was Read-Forbes attorney and also on the Board of Directors for the company in question. Ron Partee received a check almost monthly from the credit counseling agency. It was Ron Partee that guided Read-Forbes through many of her decisions as seen by the transcripts and meetings were held at Partee's office. See PSR #62 and #66.

See Doc. 236 pg. 132 or 204-Where Forbes asks Partee about helping store the marijuana. Partee said no so Forbes did not do it. Also see the transcripts where Forbes refers to Partee as the Boss.

Ron Partee is a similarly situated defendant as Read-Forbes but he received a sentence of 60 months and Mendy Read-Forbes received 240 months. See Partee Case 2:12CR20006-1

| | |
|---|---|
| Partee *Charged-Money Laundering* | Read-Forbes *Charged Money Laudering* |
| Partee and Read-Forbes both graduated from law school. | Law School Graduate 2003 |
| Partee Defense Lawyer for 30 years. | ------------------------- |
| No Criminal History | No Criminal History |
| Non-violent offender | Non-Violent Offender |
| PSR #58 Partee prepared and signed contract | DID NOT PREPARE OF SIGN CONTRACT |
| PSR#62 meeting at Ron's office | Meeting at Ron's Office |
| PSR#66 meeting at Ron's office | Meeting at Ron's Office |
| enhancement of $234,000 | enhancement of 1.1 million (disparity) |
| Ron knew of money drops at his office See #62 and 66 | |

Doc. 236 Page 130 or 204 ..."Did you every meet with Ron Partee?" A:
Q: "How many times..?"
A: I met him once in passing while I was doing a money drop at the office where he was coming out of his personal office we

TRULINCS 22253031 - READ-FORBES, MENDY - Unit: CCC-B-A

--------------------------------------------------------------------------------

were going to the conference room. We met in passing.
Then on May 25th, I had just done a money drop in his personal office with Ms. Forbes.

LAURA SHOOP WAS SENTENCED TO 71 MONTHS BUT AFTER HER COOPERATION WITH THE GOVERNMENT SHE RECEIVED 42 MONTHS.

| Shoop-*Charge Money Laundering*<br>Shoop on FCP Account PSR#75 | Read-Forbes - *Charge Money Laundering*<br>Not on FCP Account |
|---|---|
| Not a first time offender Category II | First Time Offender Category I |
| PSR #68 Shoop Driving through Drive<br>Through To Make Deposit To Max Lawncare | Couldn't drive major surgery<br>lots of pain pills and drainage tube |
| Agreed to transport drugs since flight attendant<br>Bought Refrigerator to hide marijuana | Partee told her no to storage Forbes said NO<br>Would not store drugs |
| Wheeled drugs out of last meeting | Refused to touch the drugs or wheel them out |
| Her Plea Paragraph II $234,000 enhancement | loss enhancement $1.1 million |
| Doc. 236 P. 74/204 The two females were<br>Ms. Shoop's daughters... | enhancement for use of minor |
| Used Jean Ann Rucker's login for counseling's | Used Jean Ann Rucker's login for counseling's<br>(with her permission she used Herrera) |

If you look at the similarly situated defendant's there is a clear sentence disparity. Laura Shoop was going to use her job as a flight attendant to transport marijuana to the West Coast that is when she solidified her involvement. SEE #78 of Read-Forbes Pre-Sentencing Investigation

Also as you see by The District Courts incorrect information Partee prepared and signed the contract not Read-Forbes. See #58 of Read-Forbes Pre-Sentencing Report. There is no way under basic contract law that Forbes could have driven the contract or received a sentencing enhancement of $1.1 million when Read-Forbes was not on the Board of Directors, not a signor on the account.

We recognize that the objective of individualized sentencing in some contexts may be viewed as being in tension with {2009 U.S. App. LEXIS 58} the objective of avoiding unwarranted sentencing disparities. See, e.g., United States v. Evans, 526 F.3d 155, 167 (4th Cir.) (Gregory, J., concurring) (noting the "analytical tension" involved in "ensur[ing] that the sentence caters to the individual circumstances of a defendant, yet retains a semblance of consistency with similarly situated defendants"). cert. denied. 129 S. Ct. 476 (2008). In pursuing the former (i.e., individualized sentencing), a sentencing court may mistakenly predicate a sentence on features of an individual defendant that do not actually separate him or her in any meaning ful way from the mine-run of defendants who have committed the same of similar offense, thereby creating unwarranted sentencing disparities among WHAT ARE IN FACT SIMILARLY SITUATED DEFENDANTS. However, the concern her is the imposition of sentences based upon factors completely unrelated to an individual defendant's criminal culpability. In that situation, there is a danger that others who share the same or similar degree of criminal culpability will not receive like sentences because the court's sentences are not in significant part actually predicated on criminal culpability at all--thus, {2009 App. LEXIS 59} creating unwarranted sentencing disparities.

That is what happened in Read-Forbes case the court mistakenly predicated Read-Forbes sentence on features of an individual creating a sentencing disparity between Laura Shoop/ Ron Partee and Ms. Forbes sentence. Again if you compare all the information there is a serious disparity.

First, the Court should be struck by the sheer and unusual length of Ms. Forbes sentence. At 38 years old, Forbes was sentenced to 20 years in prison for a money-laundering crime that was in the amount of $234,000. The government failed to prove by a Preponderance of Evidence when it stated the case they relied upon is QUESTIONABLE. They said that Forbes sentence would then be 135-168 months which would have been a reasonable sentence using the $234,000 sentence enhancement the same as Laura Shoop's see Plea Agreement Paragraph 2 it states $234,000. Also Ron Partee's sentence was enhanced by the amount of $234,000.

TRULINCS 22253031 - READ-FORBES, MENDY - Unit: CCC-B-A

------------------------------------------------------------------------------------------------

FROM: 22253031
TO: Estes, Mark
SUBJECT:
DATE: 06/23/2024 01:10:28 PM

Read-Forbes has great interaction with both peers and staff as reported by Case Manager Hartiman in exhibit J-2 previously filed with this court along with: (1) minimum recidivism (2) minimum violence pattern score (3) has over 1700 programming days equating to an approximate additional 27 months off her sentence per FSA- The first 365 days off her sentence then 15 months she has already earned towards home confinement (4) last incident report was 4 years ago (5) on 12-20-20 her pattern score was 19 and now it is negative -1 showing she is ready to reintegrate back into society.

Those special conditions promote respect for the law, protect the public, and do not constitute any approval of her past criminal conduct. At this juncture, use of the First Step Act will no create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar crimes." 18 U.S.C. 3553(a)(6).

The Defendant respectfully requests a term of SUPERVISED RELEASE with SPECIAL CONDITIONS (not to exceed the original term of imprisonment) and those special conditions to include vital and necessary mental health counseling and psychological care/treatment. She will comply with the rules and regulations of the U.S. Probation Office.

Your Honor, the Defendant has (1) exhausted her Administrative Rights- the Defendant requested Compassionate Release from the Warden of the Defendant's facility originally on February 15, 2023 and her BP-11 was denied in March of 2024 further showing the delay (2) provided documented extraordinary and compelling reasons to warrant a reduction in sentence as determined by the United States Sentencing Commission; and, (3) submit to this Honorable Court the 3553(a) factors WEIGH IN FAVOR OF RELEASE considering the term of supervised release and the fact that se is held in minimum security custody and the AUSA's office has stated that defendant does not appear to be a danger to society.

The Defendant prays that this Honorable Court finds Compassionate Release is appropriate at this time.

Respectfully Submitted,

Mendy Read- Forbes 22253031

TRULINCS 22253031 - READ-FORBES, MENDY - Unit: CCC-B-A          *Exhibit X-1*

---

FROM: 22253031
TO: AW (O)
SUBJECT: ***Request to Staff*** READ-FORBES, MENDY, Reg# 22253031, PEK-F-A
DATE: 06/08/2024 11:51:22 AM

To: Bragen
Inmate Work Assignment: Nebraska Head Orderly

Sir I have not received an outcome to my PREA Investigation regarding my sexual assault by Office Born in Hazelton West Virginia it has been a long time. In reading Policy it states that I am to be given notice within 90 days and if requested then they can request a 70 day extension they never requested a 70 day extension and it is well over one year for the investigation. Could you please let me know something or who I need to contact I need some kind of outcome to move forward with the court system even thought this equates to undue delay. Thank you for your time and consideration.

TRULINCS 22253031 - READ-FORBES, MENDY - Unit: CCC-B-A          *Exhibit-X-2*

--------------------------------------------------------------------------------

FROM: Cariglio, Gennaro
TO: 22253031
SUBJECT: RE: Case
DATE: 04/03/2024 11:51:08 AM

If they are asking for damages in the form. Ask for 8 million.

MENDY READ-FORBES on 4/1/2024 10:05:21 PM wrote
I will fill out the form and I will call you on your cell the only time I can call because they are doing contract work on my unit will be from 1115 to 1200 central time so I will try on Tuesday. What is the amount I should put on the form? Thank you for your time and have a great night. Mendy
-----Cariglio, Gennaro on 4/1/2024 1:06 PM wrote:

>

Call me on my cel (305) 790-7940. In the meantime we will set up a legal call. File that form.

MENDY READ-FORBES on 3/25/2024 1:35:02 PM wrote
I sent a Sensitive 10 after the assault and didn't hear anything (I have a copy of it) I was sent to Aliceville after sending this to Annapolis Maryland my Region at that time. Then upon still not hearing anything I sent a copy of what was originally sent. Still nothing finally I found out we had a Prea Manager and asked him about the situation and they took up the formal complaint. My research tells me if this is true that I have to file like many of the Dublin women that were ignored and paperwork also "lost" under the sex trafficking statute it being 10 years. No form 95 was submitted because I was waiting on Region to contact me and they never did comply. Please tell me there is something I can do against him and this situation. This entire situation disguists me.
-----Cariglio, Gennaro on 3/25/2024 10:51 AM wrote:

>

Did you submit form 95 within two years from the last incident to preserve your federal claim?

MENDY READ-FORBES on 3/25/2024 9:21:45 AM wrote
They have not told me anything to this day only that my Compassionate Release is at the Office of the General Counsel in Washington and it has been there now for over a year.
-----Cariglio, Gennaro on 3/25/2024 7:36 AM wrote:

>

Did they investigate your case administratively and make any findings?

MENDY READ-FORBES on 3/24/2024 10:51:07 PM wrote
He has not been charged in my case but he was charged in one already and has been fired.
-----Cariglio, Gennaro on 3/24/2024 8:51 PM wrote:

>

I do file Compassionate Release motions and depending on the case we handle PREA violations. Was an officer charged and/or fired in connection with your case?

MENDY READ-FORBES on 3/24/2024 7:35:01 PM wrote
Do you do Compassionate Release Motions and File against the BOP for the Sexual Assaults. I was sentenced in the District of Kansas 12-20099.
-----Cariglio, Gennaro on 3/24/2024 3:21 PM wrote:

>

For a compassionate release motion? If so, send me the district where you were sentenced and the case number.

MENDY READ-FORBES on 3/24/2024 2:06:50 PM wrote

Read-Forbes
22253031
MCC-Metropolitan Correctional Center
71 W. Van Buren St.
Chicago, IL 60605

S SUBURBAN IL

24 JUN 2024  PM

FOREVER USA    FOREVER USA

U.S. Court House
500 State Ave
Kansas City, KS
        66101-2400
Attn' Clerk

RECEIVED

JUN 27 2024

CLERK, U.S. DISTRICT COURT
KANSAS CITY, KANSAS